UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

RYAN O'DELL,                                          :
                                                     :
                    Plaintiff,                       :   Civil Action No. 23-cv-04189
                                                     :
v.                                                   :   **COMPLAINT FOR VIOLATIONS OF**
                                                     :   **SECTIONS 14(a) AND 20(a) OF THE**
NATIONAL INSTRUMENTS                                 :   **SECURITIES EXCHANGE ACT OF**
CORPORATION, MICHAEL MCGRATH,                        :   **1934**
ALEXANDER DAVERN, ERIC                               :
STARKLOFF, DUY-LOAN LE, GERHARD                      :   **JURY TRIAL DEMANDED**
FETTWEIS, PH.D., JAMES CASHMAN, III,                 :
LIAM GRIFFIN, and GAYLA DELLY,                       :
                                                     :
                    Defendants.                      :

---------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against National Instruments Corporation

("National Instruments" or the "Company") and the members of National Instruments' board of

directors (the "Board" or the "Individual Defendants" and collectively with the Company, the

"Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of

1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-

9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of National Instruments

by affiliates of Emerson Electric Co. ("Emerson Electric").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on May 11, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Emersub CXIV, Inc. ("Merger Sub"), a wholly owned subsidiary of Emerson Electric, will merge with and into National Instruments, with National Instruments surviving as a wholly owned subsidiary of Emerson Electric (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on April 12, 2023 (the "Merger Agreement"), each National Instruments stockholder will receive $60.00 in cash (the "Merger Consideration") for each National Instruments share owned.

3.      As discussed below, Defendants have asked National Instruments' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, BofA Securities, Inc. ("BofA") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to National Instruments' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, an owner of National Instruments stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Michael McGrath has served as a member of the Board since May 2014 and is the Chair of the Board.

11.     Individual Defendant Alexander Davern has served as a member of the Board since January 2017.

12.     Individual Defendant Eric Starkloff has served as a member of the Board since February 2020 and is the President and Chief Executive Officer of the Company.

13.     Individual Defendant Duy-Loan Le has served as a member of the Board since September 2002.

14.     Individual Defendant Gerhard Fettweis, Ph.D. has served as a member of the Board since March 2016.

15.     Individual Defendant James Cashman, III has served as a member of the Board since March 2019.

16.     Individual Defendant Liam Griffin has served as a member of the Board since March 2019.

17.     Individual Defendant Gayla Delly has served as a member of the Board since March 2020.

18.     Defendant National Instruments is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 11500 North Mopac Expressway, Austin, Texas 78759.  The Company's stock trades on the NASDAQ Stock Market under the symbol "NATI."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

21.     National Instruments provides a software-centric platform to engineers and scientists worldwide.  Its programming environments software includes NI LabVIEW, a graphical software platform to visualize hardware configuration, measurement data, and debugging; NI LabWindows/CVI, an ANSI C integrated development environment and engineering toolbox; and NI Measurement Studio, a suite of .NET tools for building engineering applications in Microsoft Visual Studio.  The Company's application software comprises NI TestStand that is used for automated test and measurement applications in manufacturing environment; NI VeriStand, a software environment for configuring real-time testing applications; Flexlogger for sensor

configuration and data logging of mixed signals.  Its operations management and analytic

enterprise software include NI DIAdem, which is a set of configuration-based technical data

management, analysis, and report generation tools to mine and analyze engineering and

measurement data; NI SystemLink, a systems management and data collection software that

enables the mass coordination of connected devices, software deployments, and data

communications throughout a distributed system; and NI Optimal Plus.  The Company also offers

PXI and NI C-series hardware; NI PXI modular instrument platform; and NI semiconductor test

systems, as well as software and hardware maintenance, and training and certification services.  It

serves semiconductor and electronics, transportation, aerospace, and defense industries; and

government agencies.  The Company sells its products through direct sales, independent

distributors, original equipment manufacturers, resellers, and system integrators and consultants.

National Instruments was incorporated in 1976 and is headquartered in Austin, Texas.

22.    On April 12, 2023, Emerson Electric and the Company jointly announced the

Proposed Transaction:

> ST. LOUIS and AUSTIN, Texas, April 12, 2023 /PRNewswire/ --
> Emerson (NYSE: EMR) and NI (Nasdaq: NATI) today announced
> that they have entered into a definitive agreement under which
> Emerson will acquire NI for $60 per share in cash at an equity value
> of $8.2 billion. Emerson already owns approximately 2.3 million
> shares of NI, representing approximately 2% of shares outstanding,
> which were acquired at a weighted average price of $36.84. As a
> result, Emerson's effective per share purchase price is $59.61.
>
> NI provides software-connected automated test and measurement
> systems that enable enterprises to bring products to market faster
> and at a lower cost. NI's solutions help customers solve current and
> future test challenges and improve speed and efficiency in their
> product development cycles. NI had $1.66 billion in 2022 revenue
> and operates in more than 40 countries, serving approximately
> 35,000 customers across semiconductor and electronics,
> transportation, and aerospace and defense markets.

"We are pleased to reach an agreement with NI, whose best-in-class test and measurement product and software offerings accelerate Emerson's progress toward a cohesive, higher growth and higher margin automation portfolio," said Lal Karsanbhai, President and Chief Executive Officer of Emerson. "With this expansion into test and measurement, Emerson will enhance its automation capabilities and gain a broader set of customers that relies on NI's solutions at critical points along the product development cycle. These capabilities provide Emerson industry diversification into attractive and growing discrete markets like semiconductor and electronics, transportation and electric vehicles, and aerospace and defense that are poised to benefit from secular growth trends. NI's business is well-aligned with our vision for automation and we look forward to working together to bring more comprehensive and innovative solutions to our customers, accelerate growth and position Emerson to deliver significant shareholder value."

"Over the past several months, we've been evaluating strategic options for the future of our business with the intent to maximize its value," said Eric Starkloff, NI's Chief Executive Officer. "We ran a robust and comprehensive process, considered a range of potential options, and believe this represents the best outcome for all NI stakeholders. This transaction is a strong testament to the improvements and initiatives we've implemented in recent years that have transformed NI into a software focused company with higher growth, better profitability and lower cyclicality. We're thrilled that Emerson recognizes the value we've created and we believe they will help us build on our momentum to further position NI as a leading provider of software-connected automated test and measurement systems."

**Compelling Strategic and Financial Rationale**

- **Balanced and Diversified End Markets:** With favorable long-term trends and an estimated priority total addressable market of $35 billion, the test and measurement market is fast-growing, highly complementary and one of the four priority adjacencies Emerson presented at its 2022 Investor Conference. The transaction is expected to drive value creation and advance Emerson's position as a global automation leader by expanding and diversifying its customer base within highly attractive end markets. With a diversified end market mix including semiconductor and electronics, transportation, and aerospace and defense, NI is expected to be well positioned to capitalize on megatrends that offer attractive growth opportunities. In markets like semiconductor and electric vehicle manufacturing, NI expands Emerson's reach into the design and validation phase of the lifecycle, providing early access

6

to customers. Overall, NI will increase Emerson's end market exposure in discrete markets to 18% of sales, which will be Emerson's second largest industry segment.

- **Complementary Software and Innovation Capabilities:** NI's technology stack of industry-leading intelligent devices, controls and software complements Emerson's own technology stack and will accelerate Emerson's efforts to create a higher value, cohesive industrial technology portfolio. NI's flexible and modular system-level test solutions have an open and interoperable software platform, a key differentiator that enables customers to continually evolve and automate their test processes in increasingly complex and fast-changing end markets. With 20% of sales in software, NI also increases Emerson's exposure to high-growth industrial software opportunities. Both Emerson and NI share innovation-focused engineering cultures. With Emerson's proven track record of innovation and successful new product launches, the combined company will be able to accelerate and expand the development of innovative offerings for customers leveraging the complementary expertise of both organizations.

- **Delivers Substantial Synergies:** Emerson has identified $165 million of cost synergy opportunities by the end of year 5 through application of best practices from the Emerson Management System. Emerson intends to drive productivity improvements and streamline duplicative costs across general and administrative, sales and marketing, and research and development functions, while leveraging Emerson's scale in manufacturing and supply chain. Additional opportunities to enhance NI's free cash flow generation will be pursued through proven operational excellence and productivity levers.

- **Strong Financial Profile and Attractive Returns for Shareholders:** The transaction is expected to be immediately accretive to adjusted EPS and Emerson's long-term financial targets outlined at Emerson's 2022 Investor Conference. NI's strong positions in attractive and growing markets are expected to deliver sustainable underlying growth aligned to Emerson's 4-7% through-the-cycle underlying growth target. NI also brings significant recurring revenue and immediate gross margin accretion to the combined Emerson portfolio. The combination of strong growth, attractive gross margins and the synergy potential to expand operating margins all contribute to returns in line with Emerson's communicated returns criteria.

- **Unites Aligned Company Cultures**: NI's innovation and problem-solving focused culture is highly complementary with Emerson's

purpose-driven culture focused on innovation. Employees will have expanded opportunities for career development and advancement within Emerson.

**Transaction Terms & Approvals**

The transaction has been approved by the Boards of Directors of both Emerson and NI. Under the terms of the agreement, NI shareholders will receive $60 per share in cash, which represents a 49% premium to NI's closing share price as of January 12, 2023, the day prior to NI's public announcement of a strategic review.

The transaction is expected to close in the first half of Emerson's fiscal 2024, subject to the completion of customary closing conditions, including regulatory approvals and approval by NI shareholders. Emerson expects to finance the transaction using available cash and liquidity, including approximately $8 billion of post-tax proceeds from the majority sale of Climate Technologies to Blackstone announced in October 2022, which is expected to close in the second calendar quarter of 2023.

**Emerson Reaffirms Second Quarter 2023 Guidance**

On February 8, 2023, Emerson provided continuing operations second quarter underlying sales growth guidance of 8%-10% and adjusted earnings per share guidance of $0.95-$1.00. Emerson is reaffirming this guidance.

\* \* \*

**Advisors**

Goldman Sachs & Co. LLC and Centerview Partners LLC are serving as financial advisors to Emerson and Davis Polk & Wardwell LLP is serving as legal advisor. BofA Securities is serving as exclusive financial advisor to NI and Wachtell, Lipton, Rosen & Katz is serving as legal advisor.[1]

\* \* \*

---

[1] *Emerson to Advance Global Automation Leadership Through Acquisition of NI*, PR NEWSWIRE (Apr. 12, 2023), https://www.prnewswire.com/news-releases/emerson-to-advance-global-automation-leadership-through-acquisition-of-ni-301795491.html.

23.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that National Instruments' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

24.     On April 28, 2023, National Instruments filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25.     The Proxy Statement fails to provide material information concerning financial projections by National Instruments management and relied upon by BofA in its analyses.  The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.  The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors to aid them in forming a view about the stand-alone valuation of the Company.  Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that National Instruments management provided to the Board and BofA.  Courts have uniformly stated that "projections …

are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

26.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Adjusted Diluted Earnings Per Share, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[2]

29.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning BofA's Financial Analyses*

30.     With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each company selected by BofA for the analysis; and (ii) the inputs and assumptions underlying the range of calendar year 2022 and 2023 adjusted EBITDA multiples of 15.5x to 17.5x and 12.5x to 16.5x, respectively, selected by BofA for the analysis.

31.     With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each transaction selected by BofA for the analysis; and (ii) the inputs and assumptions underlying the range of LTM adjusted EBITDA and NTM adjusted EBITDA multiples of 14.5x to 22.0x and 13.0x to 17.5x, respectively, selected by BofA for the analysis.

32.     With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the perpetuity growth rate of 3.0% to 3.50%; (iii) the inputs and assumptions underlying the discount rates ranging from 8.75% to 10.75%; and (iv) the weighted cost of capital of the Company.

---

[2] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

33.     With respect to BofA's analysis of stock price targets, the Proxy Statement fails to disclose: (i) the research analysts observed; and (ii) the public market trading price targets for the shares of National Instruments common stock prepared and published by the research analysts.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial

projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of National Instruments within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of National Instruments, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of National Instruments, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of National Instruments, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger

Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


DATED: May 19, 2023

                                        **WOLF HALDENSTEIN ADLER**
                                        **FREEMAN & HERZ LLP**

                                        /s/ *Benjamin Y. Kaufman*
                                        Benjamin Y. Kaufman
                                        Rourke C. Donahue
                                        270 Madison Avenue
                                        New York, NY 10016
                                        Telephone: (212) 545-4620
                                        Fax: (212) 686-0114
                                        kaufman@whafh.com
                                        donahue@whafh.com

                                        *Attorneys for Plaintiff*